Brandon J. Tittle
Texas Bar No. 24090436
**TITTLE LAW GROUP, PLLC**
5550 Granite Pkwy, Suite 290
Plano, Texas 75024
Telephone: 972.987.5094
Email: btittle@tittlelawgroup.com

**PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 22-60191** |
| **DILIGENT SPECIALIZED, LLC,** | § | |
| | § | **Chapter 11 (Subchapter V)** |
| Debtor. | § | |

**DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL OF EXISTING SECURED LENDER, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, (III) MODIFYING THE AUTOMATIC STAY TO ALLOW FOR THE RELIEF REQUESTED HEREIN AND (IV) SCHEDULING FINAL HEARING**

**YOUR RIGHTS MAY BE AFFECTED BY THE RELIEF SOUGHT IN THIS PLEADING. YOU SHOULD READ THIS PLEADING CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. IF YOU OPPOSE THE RELIEF SOUGHT BY THIS PLEADING, YOU MUST FILE A WRITTEN OBJECTION, EXPLAINING THE FACTUAL AND/OR LEGAL BASIS FOR OPPOSING THE RELIEF.**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION/OBJECTION/APPLICATION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING _WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE_ SHOWN IN THE CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING WITH**

**APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

TO THE HONORABLE JASON SEARCY
UNITED STATES BANKRUPTCY JUDGE:

Diligent Specialized, LLC ("Diligent Specialized," or the "Debtor"), the debtor and debtor in possession in the above-captioned case (the "Debtor"), hereby moves (the "Motion") this Court for entry of an interim order substantially in the form attached hereto (the "Interim Order") and a final order substantially similar to the Interim Order under sections 105(a), 361, 362, 363 and of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving the Debtor's use of Cash Collateral (defined below), (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral, (iii) modifying the automatic stay to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and a subsequent Final Order and (iv) scheduling a final hearing for this Court to consider entry of a Final Order authorizing and approving the relief requested in this Motion; and (iv) granting related relief as further described herein. In support of the Motion, the Debtor, by and through its proposed undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, 1107, and 1108, and Bankruptcy Rules 6003 and 6004.

## RULE 4001 STATEMENT

3. By this Motion, the Debtor seeks authority to use the alleged Cash Collateral (defined herein) of TBS Factoring Service, LLC ("TBS"). The Debtor seeks to use Cash Collateral as working capital to fund the operation of its business. As adequate protection for any diminution in value incurred by TBS through the Debtor's use of Cash Collateral, the Debtor will (i) maintain the value of its business as a going-concern, (ii) provide to TBS replacement liens on now owned and after-acquired cash derived from TBS's Collateral, and (iii) provide superpriority administrative claims to the TBS equal to any diminution in value of TBS's Collateral.

## BACKGROUND

**A.    General.**

4. On May 2, 2022 (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor continues to operate its business and manage its properties as debtor and debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5. To date, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for the Eastern District of Texas (the "United States Trustee"). No trustee or examiner has been appointed in the Chapter 11 Case.

6. A decrease in transportation and shipping needs, along with other operational issues, caused by the recent and ongoing COVID-19 pandemic caused Diligent Specialized to seek protection under the Bankruptcy Code in an effort to reorganize its finances and exit bankruptcy as a fully operational and profitable business.

**Debtor's Emergency Motion for an Interim and Final Order (i) Authorizing the Debtor to Use Cash Collateral of Existing Secured Lender, (ii) Granting Adequate Protection for Use thereof, (iii) Modifying the Automatic Stay to Allow for the Relief Requested Herein and (iv) Scheduling Final Hearing—Page 3 of 15**

**A.     The Debtor's Factor Agreement with TBS.**

7.     Prior to the Petition Date, TBS, as lender, and The Debtor, as borrower, entered into, among other documents and agreements, that certain Accounts Receivable Purchase and Security Agreement Terms and Conditions dated October 9, 2019 (the "Purchase Agreement"), that certain Schedule A – Discount Schedule dated October 9, 2019 (the "Discount Schedule"), that certain Notice of Assignment and Change of Payee dated October 9, 2019 (the "Notice of Assignment"), and that certain Advance Payment Program dated October 9, 2019 (the "APP," and collectively with the Purchase Agreement, Discount Schedule, and Notice of Assignment, the "Factor Agreement") . According the Factor Agreement, TBS is allegedly secured by all of the Debtor's real estate, accounts receivables, inventory, instruments, equipment, intangibles, accounts, chattel paper, good will, specific property and all property of the Debtor ("TBS's Pre-Petition Collateral").

8.     As of the Petition Date, the Debtor allegedly owes TBS $26,000 on behalf of the APP, which allowed the Debtor to receive advances from TBS of up to 50% on loads hauled for brokers or shippers approved for factoring.  TBS allegedly recorded a UCC-1 financing statement (the "Financing Statement") with the Colorado Secretary of State.  As a result, TBS alleges that pursuant to the Factor Agreement and the Financing Statement, it has a first priority lien on all of assets of the Debtor, including the Debtor's cash (collectively, "TBS Cash Collateral").

**B.     The Debtor's Needs to Use TBS's Cash Collateral.**

9.     Though simple when broken down to the basics, the Debtor cannot maintain its existing assets without the use of TBS's Cash Collateral.  The use of existing cash is required to pay operational expenses, including the cost of fuel.

10. Without the use of their revenue, the Debtor's assets will be wasted through foreclosure and will not be available to allow the Debtor to reorganize and maximize the return to all creditors, not just a single secured creditor. A foreclosure by TBS will lead to a complete liquidation of the Debtor's business.

11. The Debtor's proposed Interim Order requests, among other things including procedural adequate protection requirements, the following salient relief:

   a. Maintaining the going concern value of the Collateral by using the Cash Collateral to continue to operate the business and administer this case, including using Cash Collateral to fund working capital expenditures, expenses, payment of authorizations for expenditures, payment of legal and professional fees and for other general corporate expenditures including expenses to protect TBS's collateral;

   b. Granting TBS post-petition replacement liens pursuant to 11 U.S.C. § 361(2). TBS shall be granted a post-petition security interest in and replacement lien (the "Replacement Lien") upon, subject only to prior non-avoidable liens, the Debtor's assets and property of every kind. The Replacement Lien shall serve as adequate protection for the use of the Collateral to the extent of any diminution of the value of the Collateral; and

   c. Providing TBS a superpriority claim pursuant to 11 U.S.C. § 507(b) in the Debtor's Chapter 11 case and against the Debtor's bankruptcy estate for the Debtor's use of Cash Collateral to the extent of any diminution in the value of the Debtor's interest in the Collateral and this administrative claim shall have priority over and above all other costs and expenses of the kind specified in, or ordered pursuant to, §503(b) or § 507(a) of the Bankruptcy Code except as provided herein.

   d. The above are subject to a carve-out that will be used to fund U.S. Trustee Fees and approved professional expenses.

## RELIEF REQUESTED

12. By this Motion, the Debtor requests (a) entry of an interim order of the Bankruptcy Court (i) approving the Debtor's use of Cash Collateral, (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral, (iii) modifying the automatic

stay to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and a subsequent Final Order and (iv) schedule a final hearing for this Court to consider entry of a final order authorizing and approving the relief requested in this Motion.

## BASIS FOR RELIEF

13. Under 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in the cash collateral consents or if the Court, after notice and a hearing, authorizes the use of the cash collateral. Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

14. Section 363(e) further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S C. § 363(e).

15. Bankruptcy Rule 4001(b) and (d) govern the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization. More simply stated, if the ice cream is melting, cash needs to be made available to turn the freezer back on.

16. Although the Bankruptcy Code does not expressly define "adequate protection," Bankruptcy Code section 361 provides a non-exhaustive list of examples of adequate protection including: (i) a lump sum or periodic cash payments; (ii) replacement liens; and (iii) administrative priority claims. See 11 U.S.C. § 361. Generally, courts decide what constitutes adequate protection on a case-by-case basis. *See Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re*

*Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

17. Courts have consistently recognized that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the collateral. *See, e.g.*, *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate post-petition, then the secured creditor is adequately protected); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); In re Stein, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

18. The debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.

**A.     The Use of Cash Collateral is Necessary to Maintain the Debtor's Going Concern Value.**

19.     As of the date of filing this Motion, the Debtor does not have sufficient unencumbered cash to fund its business operations and pay present operating expenses.  As a result, without the use of Cash Collateral the Debtor will be unable to meet basic operating expenses, which will jeopardize the survival of the Debtor's business.

20.     Stated in basic terms, the Debtor has an urgent and immediate need for the use of Cash Collateral pending a final hearing on this Motion.  Any lapse in the Debtor's ability to pay operating expenses or its normal bills and expenses as they become due will have a devastating economic impact on the going concern value of the Debtor's business.  However, to protect TBS for any unreasonable expenditures, the Debtor shall only pay those bills and expenses listed in the Debtor's 13-week cash flow budget, a copy of which is attached hereto as **Exhibit A**.

21.     If the Debtor is not allowed to continue paying their expenses and operate their assets, such assets will decline in value (or disappear) and will generate no revenue to pay creditors. *In re Las Vegas Monorail Co.*, 429 B.R. 317, 341-42 (Bankr. D. NV 2010) (the debtor's "use of the cash it generates in its operations is itself a form of adequate protection"); *In re 499 W. Warren Street Assocs., Ltd. P'ship*, 142 B.R. 53, 58 (Bankr. N.D.N.Y. 1992) (allowing the use of cash collateral to maintain property); *In re Constable Plaza Associates*, 125 Bankr. 98, 105 (Bankr. S.D.N.Y. 1991) ("debtor's plowing back rents solely for the purpose of maintaining and operating its office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage").

22. Accordingly, the use of Cash Collateral will allow the Debtor to continue its operations, preserve TBS's and any other secured creditors' collateral and protect TBS's and any other secured creditors' interests.

**B. The Debtor Proposes the Granting of a Replacement Lien as Additional Adequate Protection.**

23. Additionally, through this Motion, the Debtor intends to provide adequate protection, to the extent of any diminution in value, to a secured party's collateral for the use of Cash Collateral by providing to such secured party post-petition liens pursuant to 11 U.S.C. § 361(2) in cash and other assets generated by or received by the Debtor from the secured party's Collateral subsequent to the Petition Date, but only to the extent that the secured party had valid, perfected prepetition lien and security interest in such Collateral as of the Petition Date. As of the filing of this Motion, the Debtor is only aware of this provision being applicable to TBS. The priority of any post-petition replacement liens granted to the secured party or any other secured creditor shall be the same and in the same priority as existed as of the Petition Date.

**C. The Debtor's Proposes the Granting of a Superpriority Administrative Expense Claim as Additional Adequate Protection.**

24. Further, the Debtor intends to provide adequate protection, to the extent of any diminution in value, to a secured party's collateral (to the extent that the diminution in value is not caused by the secured party's actions or refusal to allow the Debtor to pay debts necessary to preserve its Collateral) for the use of Cash Collateral by providing to such secured party a superpriority administrative expense claim pursuant to 11 U.S.C. § 507(b) (the "Superpriority Administrative Expense Claim"). The Superpriority Administrative Expense claim will be superior to all other allowed administrative expense claims and unsecured claims. Once again, as of the filing of this Motion, The Debtor is only aware of this provision being applicable to TBS.

## LEGAL COSTS AND FEES

25. The Debtor's ability to continue to operate, reorganize and confirm a plan is dependent upon the ability to retain and pay professionals and U.S. Trustee Fees, including The Debtor's counsel. Therefore, The Debtor seeks a carveout equal to (i) the fees required to be paid to the Clerk and the U.S. Trustee; and (ii) all accrued and unpaid fees, disbursements, costs and expenses of professionals or professional firms retained by the Debtor and any official committee of creditors.

## THE AUTOMATIC STAY SHOULD BE MODIFIED ON A LIMITED BASIS

26. The relief requested herein contemplates a modification of the automatic stay pursuant to Bankruptcy Code section 362 to (a) permit the Debtor to grant adequate protection liens described above with respect to prepetition, perfected and secured parties, and to perform such acts as may be reasonably requested to assure the perfection and priority of such liens and (b) implement the terms of the Interim Order.

## REQUEST FOR INTERIM AND FINAL RELIEF

27. Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use cash collateral may not be commenced earlier than fourteen days after the service of such motion. Upon request, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. *See* FED. R. BANKR. P. 4001(c)(2). Bankruptcy Rule 6003 further provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may grant certain forms of relief during the twenty-one days immediately following the filing date. FED. R. BANKR. P. 6003.

28. An immediate need exists for the Debtor to obtain approval of the use of the alleged Cash Collateral in order to meet key necessary expenses. Without the immediate use of the alleged Cash Collateral for an interim period, the Debtor will essentially be forced to cease operating and the ice cream will melt placing valuable assets at risk and jeopardizing the ability of the Debtor to reorganize and maximize a return to creditors.

29. The Debtor, therefore, seeks immediate authority to use the alleged Cash Collateral on an interim basis as set forth in this Motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending a Final Hearing to consider entry of the Final Order.

## WAIVER OF BANKRUPTCY RULE 6004(H)

30. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

31. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim, lien or interest in or against the Debtor, the Debtor's property or any other third party, a waiver of the Debtor's or any other third party's rights to dispute any claim, lien or interest or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the

validity of any claim or a waiver of the Debtor's or any third party's rights to dispute such claim subsequently.

## REQUEST FOR A FINAL HEARING

32. As noted above, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor respectfully requests that the Court set a date for the Final Hearing that is fourteen (14) days following the entry of the Interim Order. The Debtor respectfully requests that it be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first-class mail on the (i) the Office of the United States Trustee for the Eastern District of Texas; (ii) the Debtor's top 20 list of unsecured creditors; (iii) counsel to TBS; (v) the Internal Revenue Service and (vi) to any other party that has filed a request for notices with this Court. The Debtor requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

## CONCLUSION

WHEREFORE, pursuant to Bankruptcy Rule 4001, the Debtor requests that the Court set a preliminary hearing on the Debtor's proposed use of Cash Collateral, and that at such preliminary hearing, the Court authorize the temporary use of Cash Collateral in order to avoid immediate and irreparable harm to this bankruptcy estate pending a final hearing; the Debtor requests that this Court enter an Interim Order, in substantially the form attached hereto, authorizing the Debtor to use Cash Collateral as described herein, setting the Motion for a final hearing, and granting such other and further relief as the Court may deem just and proper.

Dated: May 4, 2022

Respectfully submitted,

*/s/ Brandon J. Tittle*
Brandon J. Tittle
Texas Bar No. 24090436
**TITTLE LAW GROUP, PLLC**
5550 Granite Pkwy, Suite 290
Plano, Texas 75024
Telephone: 972.987.5094
Email: btittle@tittlelawgroup.com

**PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

## **CERTIFICATE OF SERVICE**

      I certify that on May 4, 2022, I cause a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Eastern District of Texas.

                                          */s/ Brandon J. Tittle*
                                          Brandon J. Tittle

## **EXHIBIT A**

**13-week Cash Flow Budget**

(to be filed as a supplement to the motion)